William G. REINSTEIN
vs.
SUPERIOR COURT DEPARTMENT
of the
TRIAL COURT
of
MASSACHUSETTS

Civ. A. No. 80-2242-MC

United States District Court
D. Massachusetts

December 31, 1980

Richard B. Michaud for the plaintiff.
Francis X. Bellotti for the defendant.

## MEMORANDUM AND ORDER

McNAUGHT, D.J. The petitioner, who was indicted for bribery, conspiracy and perjury, by way of this petition, claims that the Commonwealth is barred by the Double Jeopardy Clause of the Fifth Amendment from prosecuting him after a superior court Justice declared a mistrial over his objection.

Two trials were begun. The first ended in a mistrial when a witness for the Commonwealth became ill and defense counsel was unable to complete cross-examination. The second trial was scheduled, and the prosecution asked for jury sequestration with the defendant objecting thereto. The defendant agreed not to generate publicity on his behalf during the trial, and the judge did not sequester the jury.

The second trial began. On the second day of taking testimony, the trial judge's attention was called to an advertisement which appeared in a weekly television magazine distributed in Revere, Winthrop, Chelsea and East Boston. Three of the 16 jurors who had been impaneled came from that area of distribution. The advertisement asked whether the defendant was "being framed", and went on to say "If those in power are trampling on [the defendant's] rights today, tomorrow they can trample on yours." The trial was called a "miscarriage of justice", a "political vendetta". At the bottom appeared the words, "Sponsored by the Committee for Human Rights".

Prior to the trial the petitioner had disseminated material favorable to himself, but represented to the judge (and the judge accepted the representation) that he was not personally responsible for this advertisement. Now, the record discloses, the judge engaged in extensive discussion of available alternatives with counsel. After the Commonwealth urged that the jury be sequestered (see transcript of side-bar conference), defense counsel suggested that a sequestered jury under the circumstances would be an angry jury. The judge agreed that sequestration was not the answer. Defense counsel suggested polling the jury. At the hearing on this petition for the writ, counsel suggested that polling might have been done in either of two ways. The jury might be polled generally to determine whether any person on the jury had knowledge of the publication, and if any responded affirmatively, the judge could make inquiry of them individually and privately. There was also the possibility of individual private polling of the jurors without addressing them or making an inquiry of them generally. Now the trial judge posed the possibility that perhaps none of the jurors will have seen the particular advertisement as of the time of inquiry, but that with the jury unsequestered the advertisement might come to their attention thereafter. The judge declared a mistrial.

Petitioner moved for a dismissal of the indictment, asserting that a retrial would violate his rights under the Double Jeopardy Clause. The trial judge denied the motion and reported to the Massachusetts Appeals Court the propriety of his action. The Commonwealth applied to the Supreme Judicial Court of Massachusetts for direct appellate review, which was granted. In Commonwealth v. Reinstein, 1980 Mass. Adv. Sh. 2123, the Supreme Judicial Court rejected the petitioner's claim and remanded the case to the superior court for retrial. Action had been postponed by the trial judge (now the Chief Justice of the Superior Court)

pending the disposition by this Court of the instant petition.

Chief Justice Lynch, denying the motion to dismiss, filed a memorandum of decision in which he reviewed the factors he had considered before determining to declare a mistrial. He concluded that, unless the jury members were sequestered, a **voir dire** would do more harm than good. He decided that sequestration posed a substantial risk of prejudice to the petitioner, since there would be a particular impact on the jury by way of sequestration during the second day of trial.

After "weighing all of the factors", including those discussed in the colloquy with counsel at side-bar, Chief Justice Lynch decided to abort the proceedings, in response to "a situation which was created wholly by the defendant's family, relative and friends and in no way by the Commonwealth or the court."

The opinion rendered by Mr. Justice Wilkins on behalf of the Supreme Judicial Court states in part (at 2128, 2129):

The issue is whether, jeopardy having attached, there was a manifest necessity for the declaration of a mistrial. **Arizona v. Washington,** 434 U.S. 497, 505 (1978); **United States v. Perez,** 22 U.S. (9 Wheat.) 579, 580 (1824). There is no mechanical formula by which to determine the existence of manifest necessity.

The Supreme Judicial Court considered the "critical question", "whether the jury could have been sequestered at that time as a reasonable alternative to the declaration of a mistrial." They considered it significant that the defendant did not point to sequestration as a reasonable option. That jury had not been selected with sequestration in mind.

Petitioner submits here that the manifest necessity requirement has not been met; that without a **voir dire**, there was no manifest necessity to abort the trial without his consent.

First, I have no problem concerning the jurisdiction of this Court to entertain the petition in advance of a retrial in the court of the Commonwealth of Massachusetts, since petitioner's claim here is based upon double

jeopardy principles. There is no question that the petitioner is on bail (personal recognizance without surety), and faces potential re-prosecution. He is considered as if he were in the physical custody of the Commonwealth. He has a right to petition for a writ of habeas corpus in advance of any re-prosecution. **Drayton v. Hayes,** 589 F.2d 117 (2d Cir. 1979). He has exhausted his remedies in the state court, having had his claim heard by the Supreme Judicial Court of Massachusetts on direct appellate review of the questions reported by Chief Justice Lynch to the Appeals Court of Massachusetts.

The Commonwealth has argued that a judge of this federal court must look at this case as a collateral attack upon a state court judgment; that we should not look at this matter as an appellate court reviewing the action of its trial court would review it. Respondent argues that the judgment carries with it a "presumption of regularity," citing **Johnson v. Zerbst,** 304 U.S. 458, 468 (1938). It is suggested that I should consider only whether "the trial judge exercised sound discretion" or "whether he acted irrationally or irresponsibly." (Respondent's Memorandum in Opposition, p. 8.) Counsel for the petitioner agreed that my perspective should not be that of an appellate court considering the conduct of a trial judge, but petitioner insists that this is a distinction without a real difference; that the ultimate question is whether the mistrial order was justified by any showing of a high degree of necessity, or "manifest necessity." Without such a determination, asserts petitioner, the United States Constitution forbids the retrial which is sought by the Commonwealth.

The fact that the trial judge did not question the jurors under the circumstances then existing as to whether any of them had seen or heard of the publication is relied upon by the petitioner as negating any "manifest necessity for the declaration of a mistrial."

As the Supreme Judicial Court stated, "There is no mechanical formula by which to determine the existence of manifest necessity." **Commonwealth v. Reinstein,** supra at 2129. Chief Justice Lynch did

consider this matter. He reviewed it carefully. Conducting a voir dire (if no juror is aware of the publication) would inject into the trial knowledge of the publication, and that in turn, by reason of its character and its sponsors, would create an impression of impropriety on the part of the defendant. The judge considered cautionary instructions, but they, too, might create awareness of the publication for the first time. The judge explored all of the alternatives thoroughly. That exploration is set forth and attached hereto as "Appendix A", (Memorandum of Decision on Defendant's Motion to Dismiss and Report, pp. 5-ff).

The petitioner, of course, is correct in his argument that a defendant in a criminal trial has a right to have his trial completed by a particular tribunal, United States v. Jorn, 400 U.S. 470 (1971). On the other hand, a reasoned refusal to make inquiry of a jury is not, and in and of itself, forbidden constitutionally. While, in the absence of a motion by a defendant in a criminal case for a mistrial, trial judges should not declare one unless justice will not be served by a continuation of the trial, United States v. Perez, 9 Wheat. 579, 580 (1824), the option of declaration of a mistrial is available if it constitutes a scrupulous exercise of judicial discretion.

I conclude and rule on the record which is before me, after due consideration of arguments by counsel, that the trial judge was correct in his determination that the declaration of a mistrial was a matter of manifest necessity, and agree with the Supreme Judicial Court's conclusion that there had been no abuse of discretion, applying the test required by Arizona v. Washington, supra. The trial judge reviewed the alternatives open to him carefully. He considered the pluses and minuses of sequestration. He considered the potential of voir dire and decided against it out of consideration for the interests, not only of the Commonwealth, but also of the defendant. He did not deny an opportunity to be heard. He disclosed completely the bases of his determination of the high degree of need for declaring the mistrial. He acted responsibly, in handling the sensitive situation with which he was confronted. Language

employed by Judge Aldrich of our Court of Appeals in United States v. Pierce, 593 F.2d 415 (1st Cir. 1979), is appropriate here: "(W)e would not overturn a supported and reasoned exercise of discretion even if, on the basis of 20-20 hindsight, we might have reached the opposite conclusion." (At p. 419.)

From the perspective of a federal judge considering a collateral attack upon a state judgment, I find no abuse of judicial discretion. Indeed, the "manifest necessity" for the declaration of mistrial was a finding open to the judge and made properly by him.

The petition for the writ of habeas corpus must be, and is hereby denied.

So ordered.
John J. McNaught
U.S. Dist. Judge

## Appendix A

(c) The court determined not to interrogate the jurors as to their knowledge of the offending advertisement. To have done so and then to have continued the trial, with an unsequestered jury, would have (the court believed) injected into the trial knowledge of a publication which the jury, even if not apprised of its precise content, would have attributed to the defendant and which, due to the circumstances of inquiry, the jury might well have considered as a major impropriety on the defendant's part. Cautionary instructions, under the circumstances of this particular case, appeared to have a potential for more harm than good; they would have created jury curiosity and, with an unsequestered jury and the publicity that no doubt would have reached the media, would have created a situation rife with the seeds of prejudice. The case was being reported daily by the press, and it appeared to the court that, no matter what prophylactic measures were taken with the jury, to continue the case with an unsequestered jury meant the very real possibility that information of the publication would reach them through one form or another. Whether the prejudice would affect more the Commonwealth — whose motives for prosecution were sorely impugned by the offending advertisement — or the defend-

ant — who would bear the onus of the publication of the ad — was uncertain. It might well have been that both the Commonwealth and the defendant would have suffered, one with certain jurors and the other with others. Thus the court discerned the development of a situation in which a fair trial for the defendant and for the Commonwealth would no longer be assured.